IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LORENZO WALKER,

      Petitioner,

v.                                               CIV 09-1051 JB/CG

ANTHONY ROMERO, Warden, et al.

      Respondents.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

## I.  Introduction

    This matter is before the Court on Lorenzo Walker's self-styled "Petition Under 28 U.S.C. 2254 For Writ Of Habeas Corpus By A Person In State Custody."  *Doc. 1.* Because he filed this suit after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its standards apply to this case.  *E.g., AbdulKabir v. Quarterman,* 550 U.S. 233, 246 (2007); *DeLozier v. Sirmons,* 531 F.3d 1306, 1319 (10th Cir. 2008).  All of the issues can be resolved on the record before me, and, therefore, an evidentiary hearing is unnecessary.  *E.g., Schriro v. Landrigan,* 550 U.S. 465, 475 (2007); *Sandoval v. Ulibarri,* 548 F.3d 902, 915-16 (10th Cir. 2008); Rule 8(a), RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS.  I recommend that relief be granted in part.

## II.  Background

The sentence at issue was imposed in August 2008, but the charges underlying it were initiated years earlier.  In September 2004, a grand jury indicted Petitioner for one count of trafficking cocaine and one count of possession of drug paraphernalia.  *See Doc. 11-2* at 1, 4, 37, 52.  This was not Petitioner's first offense.  He also had been convicted of trafficking cocaine in 1995 and convicted of escape from jail in 1997.  *See id.* at 4.

The state docket sheet shows that the criminal proceedings were initially delayed for years, due to Petitioner's "unavailability."  *Id.* at 49.  Beginning in the Spring of 2005, a series of bench warrants and bond proceedings ensued, ending in early 2007 with Petitioner's final arrest.  *See id.* at 43-49.  Soon thereafter, he entered a written plea agreement.  It explained that the maximum penalties Petitioner faced were "a basic period of incarceration of 9 years but not less than 6 years nor more than 12 years of imprisonment . . . followed by 2 years of parole" which could be "altered up to one third for aggravating or mitigating circumstances."  *Id.* at 5.

The matter did not move directly to sentencing because, in exchange for his guilty plea to a lesser-included trafficking charge and "admission" to his 1990's prior offenses, the State agreed to defer sentencing so that Petitioner could first be sent to a "Drug Court" program.  *Id.* at 5; *see also id. ("The* State is making this referral and this sentencing agreement based upon [Petitioner's] medical condition and his need to continue his medical treatment.").  If the trial judge accepted the plea agreement and Petitioner successfully completed the program, then Petitioner would "be ordered to

serve a period of Probation," *id.* at 5.  If Petitioner was unsuccessful, however, then the

trial judge would determine the sentence, which could include "a period of incarceration

***and/or probation.***"  *Id.* (emphasis added).[1]  The trial judge accepted the plea, filed it on

June 4, 2007, and ordered Petitioner to report to the Drug Court.  *See id.* at 4, 8, 9.  By

January 2008, Petitioner was discharged as "unsuccessful" from the program due to a

chronic series of violations,[2] and his case was transferred back to the trial judge for

sentencing.  *Id.* at 17, 42.

Before sentencing, Petitioner's attorney moved to withdraw the original plea,

arguing that Petitioner did not understand his lack of success in the program would

result in the State reinstituting sentencing based on the habitual offender

enhancements.  Petitioner also filed a *pro se* motion to substitute counsel, which has

not been made part of the federal record.  *See id.* at 18-19, 40.  It is not clear when the

trial judge ruled on those motions, nor were the minutes or a transcript of the sentencing

proceedings made a part of the federal record.  *See id.* at. 39-40.  Nevertheless, the trial

---

[1]  Petitioner signed the agreement acknowledging, among other things, that "I have read and understand this agreement. . . .  I agree to enter my plea according to the terms and conditions set forth in this agreement."  *Doc. 11-2* at 7.  He also specifically acknowledged that "I understand that by admitting my identity on the prior conviction or convictions, I give up my privilege against self-incrimination if habitual offender proceedings are filed in this case under this agreement.  I understand that when I admit the validity of the prior convictions I give up my right to collaterally attack these convictions in any habitual offender proceedings which are filed under this agreement."  *Id.* at 6-7.

[2]  Petitioner failed to report for his first appointment in July 2007, and was ordered incarcerated for five days with no credit for presentence confinement or good time.  *Id.* at 10-11, 42.  For a violation reported by the Drug Court in October 2007, he was ordered incarcerated for eight days, again with no credit for presentence confinement or good time.  *Id.* at 12-13, 42.  For a violation reported by the Drug Court in early December 2007, he was incarcerated for ten days, with no credit for presentence confinement or good time.  *Id.* at 14-15, 42.  For a violation reported by the Drug Court in late December 2007, the state court ordered that Petitioner be arrested and held without bond.  *Id.* at 16, 41.

judge's subsequent actions indicate that the motion to withdraw the plea was denied.  At
the sentencing hearing in July 2008, among other conditions, the trial judge imposed the
basic incarceration period of nine years and suspended half of it, for a total term of
incarceration of four and one-half years.  Consistent with the plea agreement, he also
imposed a two-year term of parole, and a four and one-half-year term of probation, with
the parole and probation to run concurrently.  *See id.* at 1-2, 39-40.  The written
judgment followed on August 20, 2008.  *Id*. at 1.

Neither Petitioner nor his attorney filed a direct appeal, no doubt because the
plea agreement waived that right.[3]  Instead, Petitioner pursued state habeas relief *pro
se*.  His federal petition raises the same two claims that he raised in the state
proceeding — when the trial judge imposed sentence:  (1) Petitioner should have
received some twelve months credit for presentence confinement; and (2) it was "cruel
and unusual punishment" and in violation of *Blakely v. Washington,* 542 U.S. 296
(2004), to suspend part of the term of incarceration and reimpose it as a term of
probation.  *See Doc. 1* at 2-3; *Doc. 11-2* at 21-22.

 The trial judge did not require a response and summarily dismissed the state
habeas petition by checking the portion of a form order that states:  "as a matter of law
petitioner is not entitled to relief."  *Doc. 11-2* at 30; *see also id.* at 31, 39.  A timely
petition for certiorari to the New Mexico Supreme Court raised the same two claims, and

---

[3]  *See id.* at 6 ("Unless this plea is rejected or withdrawn, the defendant gives up all
motions, defenses, objections, or requests which defendant has made or could make
concerning the Court's entry of judgment against the defendant if that judgment is consistent
with this agreement.  The defendant specifically waives defendant's right to appeal as long as
the court's sentence is imposed according to the terms of this agreement.").

was promptly denied without explanation.  *See id.* at 32-34.

# III.  Analysis

## A.  The Petition Should Be Characterized As A §2254 / §2241 "Hybrid"

For prisoners challenging state convictions, the habeas statutes § 2254 and § 2241 overlap in that both authorize relief for a violation of the "Constitution or laws or treaties of he United States."  28 U.S.C. § 2241(b)(3); *id.,* § 2245(a).  A *pro se* petitioner's characterization of which statute applies is not dispositive of the issue.  *E.g., Roman-Nose v. New Mexico Dep't. of Human Serv.,* 967 F.2d 435, 436-37 (10th Cir. 1992).  As Respondents correctly note, the Tenth Circuit characterizes some challenges to the state sentences as § 2241 claims.  *E.g., Evans v. Ray,* 390 F.3d 1247, 1249-50 (10th Cir. 2004); *see also Doc. 11* at 6-7 (citing *Hamm v. Saffle,* 300 F.3d 1213, 1216 (10th Cir. 2002) and *Montez v. McKinna,* 208 F.3d 862, 865 (10th Cir. 2000)).   Although the habeas rules and many of the § 2254 concepts do apply to § 2241 proceedings, including the unavailability of relief for violations of state law,[4] the AEPDA deferential standards do not apply.

> Section 2241's applicability greatly affects our standard of review in that the deference normally accorded state court judgments under § 2254 does not apply.  Instead, we review habeas claims made pursuant to § 2241, including Ms. Walck's, *de novo. See Binford v. United States,* 436 F.3d 1252, 1253 (10th Cir. 2006); *Ferry v. Gonzales,* 457 F.3d 1117, 1131

---

[4]  *See, e.g., Boutwell v. Keating,* 399 F.3d 1203, 1211 (10th Cir. 2005) ("Because Mr. Boutwell challenges the execution of his sentence, he seeks habeas relief under 28 U.S.C. § 2241. . . .  The District Court, however, acted within its discretion by applying the Section 2254 Rules to this § 2241 petition.  *See* Section 2254 Rule 1(b) ("In applications for habeas corpus in cases not covered by [§ 2254], these rules may be applied at the discretion of the United States district court.")); *Montez,* 208 F.3d at 865 (challenge involving transfer to another state, but not presentence confinement credit, holding:  "Montez's claims of state law violations are not cognizable in a federal habeas action.  *See* 28 U.S.C. §§ 2241(c)(3), 2254(a).").

(10th Cir. 2006).

*Walck v. Edmondson,* 472 F.3d 1227, 1235 (10th Cir. 2007).

After its *Montez* decision, the Tenth Circuit has characterized challenges to the amount of presentence confinement as a § 2241 claim.[5]  Accordingly, I will recast Petitioner's § 2254 presentence confinement claim as a § 2241 claim, and apply a *de novo* review.  Under these circumstances, "advance notice" to Petitioner is unnecessary.[6]

However, not every habeas claim involving a sentence automatically qualifies as a § 2241 claim, and I disagree with Respondents that Petitioner's second claim should

_____

[5]  *See Mulberry v. Neet,* 8 Fed. App'x 896, 897 (10th Cir. 2001) ("Although Mr. Mulberry proceeded under 28 U.S.C. § 2254, we have held that a challenge to execution of state sentence arises under 28 U.S.C. § 2241.  *See Montez, . . .*  He contends that he is entitled to immediate release, but that the Colorado Department of Corrections . . . will not credit him with presentence confinement as envisioned by the various state district courts in which he was sentenced."); *Ricardo v. Ray,* 2000 WL 1089478 at * 1 (10th Cir. 2000) ("Ricardo filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that: (1) he is being denied due process and equal protection by having to serve his entire sentence without the benefit of credits for presentence confinement . . . the district court concluded that the action should be construed under § 2254 . . .  this court will treat the petition as one arising under § 2241.").

[6]  When a court recharacterizes a § 2241 claim as a § 2254 claim, advance notice is required to the Petitioner because of the consequences of successive § 2254 petitions.  *See, e.g., Davis v. Roberts,* 425 F.3d 830, 834 -835 (10th Cir. 2005) (a petitioner "may prefer  to have his claim dismissed rather than be recharacterized as a § 2254 claim because . . . AEDPA places strict limitations on second or successive claims. . . .  As a result, a district court must follow certain procedures before recharacterizing *pro se* pleadings as claims under §§ 2254 or 2255.") (citing *Castro v. United States,* 540 U.S. 375, 383 (2003), *United States v. Kelly,* 235 F.3d 1238, 1242 (10th Cir. 2000), and *Martin v. Overton,* 391 F.3d 710, 713 (6th Cir. 2004).
    This case presents the opposite situation – a § 2254 petition that contains one mislabeled § 2241 claim – and thus, the reasons for advance notice are inapplicable.  *C.f., Yellowbear v. Wyoming Atty. Gen.,* 525 F.3d 921, 925 (10th Cir. 2008) ("where the first habeas petition filed under § 2254 was properly recharacterized as a § 2241 petition because the defendant was a pre-trial detainee, the subsequent filing of a § 2254 petition does not constitute a second or successive petition."); *Hickam v. Janecka,* 287 Fed. App'x 624, 625 (10th Cir. 2008) ("As the magistrate noted, in earlier proceedings both parties referred to the action as a § 2254 action, but because it is an attack on the execution of the sentence it is properly characterized as a proceeding under § 2241.").

also be recast.  Decisions in this Circuit do recognize that a habeas petition can present a "hybrid" situation, containing both § 2254 and § 2241 claims.[7]  Though the law is not entirely clear, the Tenth Circuit generally has not recharacterized *Blakely* claims brought under § 2254 as claims brought under § 2241.[8]  Likewise, Eighth Amendment challenges to sentences are generally not treated as § 2241 claims particularly where, as here, the complaint is that the length of the sentence is unfair.[9]  At best, the issue of

---

[7]  *See, e.g., Davis v. Roberts,* 425 F.3d 830, 833 (10th Cir. 2005) ("At the outset we need to determine what avenues of relief Mr. Davis is pursuing.  First, a challenge to the execution of a sentence should be brought under 28 U.S.C. § 2241. . . .  Second, to the extent that Mr. Davis contends that his present sentence is unlawful (because it was influenced by the improper execution of his 1991 sentence), the claim should be brought under 28 U.S.C. § 2254. . . . Third, he seeks relief concerning a sentence he has already served (the 1991 sentence) by bringing a petition for a writ of coram nobis . . .  As we shall explain, all three forms of relief are barred."); *Montez,* 208 F.3d at 856 ("Analytically, Montez's petition seems to be a hybrid."); *Malek v. Friel,* 279 Fed. App'x 659, 660 (10th Cir. 2008) ("Malek filed the instant federal habeas petition on December 2, 2004, raising claims under both 28 U.S.C. § 2254 and 28 U.S.C. § 2241."); *Davis v. Bravo,* 22 Fed. App'x 971 (10th Cir. 2001) ("Davis' petition is actually a hybrid in the sense that it challenged both his underlying conviction and the execution of his sentence.").

[8]  *See, e.g., Hutchinson v. Milyard,* 325 Fed. App'x 674 (10th Cir. 2009); *Steinhour v. Archuleta,* 253 Fed. App'x  778 (10th Cir. 2007); *Williams v. Workman,* 146 Fed. App'x 267 (10th Cir. 2005).  In fact, in the § 2255 "savings clause" context, the Tenth Circuit has expressly has declined to characterize a § 2254 *Blakely* claim as a § 2241 claim.  *E.g., Purvis v. Wiley,* 214 Fed. App'x 774 (10th Cir. 2007), *Williams v. Gallegos,* 2006 WL 497721 (10th Cir. 2006).  The decisions that have used § 2241 for a *Blakely* claim involve challenges to the sentencing statute itself.  In contrast, Petitioner is challenging his particular sentence, not the statutes authorizing it.  *See Straley v. Utah Bd. of Pardons,* 582 F.3d 1208 (10th Cir. 2009); *c.f., Miller v. Gallegos,* 125 Fed. App'x 934 (10th Cir. 2005) (challenge to validity of Bureau of Prisons regulation which, if applied would reduce sentences for successful completion of substance abuse; petitioners sought to raise *Blakely* post-submission).

[9]  *See e.g., Wymer v. Workman,* 311 Fed. App'x.106, 109-10 (10th Cir. 2009) ( A sentence violates the Eighth Amendment only if it is grossly disproportionate to the severity of the crime. . . .  But [the] gross disproportionality principle reserves a constitutional violation for only the extraordinary case. . . . This is not that case. Mr. Wymer's sentence clearly did not exceed the statutory maximum punishment, which was life imprisonment. . . .  The length of Mr. Wymer's sentence was due, in large part, to the fact that he had previously been convicted of multiple violent felonies.  The OCCA's decision was not an unreasonable application of the gross disproportionality test.") (internal quotations and citations to *Ewing v. California,* 538 U.S. 11, 21 (2003); *Rummel v. Estelle,* 445 U.S. 263, 271 (1980); and *Lockyer v. Andrade,* 538 U.S. 63, 77 (2003) omitted); *compare, e.g., Brooks v. Utah,* 37 Fed. App'x 386, 387 (10th Cir. 2002)

recharacterization in this context is unsettled.  Accordingly, I will not recast Petitioner's

*Blakely*/Eighth Amendment claim and apply the AEDPA standards,[10] although in the

end, the result is the same even if I engaged in a *de novo* review.

**B.  Presentence Confinement Claim Is Not Simply A State Law Claim Under *Aycox***

A New Mexico statute governs the award of presentence credit — "A person held

in official confinement on suspicion or charges of the commission of a felony shall, upon

conviction of that or a lesser included offense, be given credit for the period spent in

presentence confinement against any sentence finally imposed for that offense."  N.M.

STAT. ANN. § 31-20-12 (West 1978).  As the New Mexico Court of Appeals explained its

*Miranda* decision, the reason for the requirement is to ensure that convicts who cannot

afford bail are treated the same as those who are not incarcerated until after trial.  *State*

*v. Miranda,* 108 N.M. 789, 793, 779 P.2d 976, 980 (Ct. App.), *cert. denied,* 108 N.M.

771, 779 P.2d 549 (N.M. 1989).  The court "has consistently held that where

confinement is related to the charges for which a defendant is ultimately sentenced, he

---

("He also appears to be challenging the execution of his sentence as unlawful, which might
properly state a claim under § 2241 of AEDPA.  Irrespective of whether his original petition was
actually filed pursuant to § 2241 or § 2254, Mr. Brooks, because he is a state prisoner, needs a
COA in order to appeal the denial of his habeas petition in the district court.").

[10]   That is, if a state court addresses a claim on the merits, a federal court cannot grant
an "application for a writ of habeas corpus" unless the State decision was (1) "contrary to" or an
"unreasonable application" of "clearly established" Supreme Court precedent or (2) an
"unreasonable determination of the facts in light of the evidence presented in the State court
proceeding."  28 U.S.C. § 2254(d).  The Supreme Court and Tenth Circuit have discussed these
deferential AEDPA standards in detail in many opinions and I will not reiterate them here.  *E.g.,*
*Panetti v. Quarterman,* 551 U.S. 930, 953-54 (2007) (and cases cited therein); *Fry v. Pliler,* 551
U.S. 112, 119-120 (same); *Gardner v. Galetka,* 568 F.3d 862, 870 (10th Cir. 2009) (same);
*Douglas v. Workman,* 560 F.3d 1156, 1170-71 (10th Cir. 2009) (same).  Although the state
decisions are conclusory, they are nonetheless entitled to deference under the AEDPA
standards.  *E.g., Sandoval v. Ulibarri,* 548 F.3d 902, 908-09 (10th Cir. 2008), *cert. denied,* 130 S.
Ct. 133 (2009).

is entitled to presentence confinement credit against such sentence, even where the confinement was not exclusively related to those charges." *State v. Irvin,* 114 N.M. 597, 599, 844 P.2d 847, 849 (N.M. Ct. App. 1992) (citing *Miranda, State v. Page,* 100 N.M. 788, 676 P.2d 1353 (N.M. Ct. App.1984), *State v. Ramzy,* 98 N.M. 436, 649 P.2d 504 (N.M. Ct. App. 1982), and *State v. Barefield,* 92 N.M. 768, 595 P.2d 406 (N.M. Ct. App. 1979)).  There is no dispute that the credit at issue is related to the sentence at issue. Indeed, as discussed below, the calculations mirror the arrest and bond entries on the state docket sheet.

*Miranda* held that "a one-day credit should be granted for every twenty-four hours, or fraction thereof" and that, if a defendant is imprisoned for any part of the same day that he is released on an appearance bond, then he "is entitled to a one-day credit." *Id.* at 792, 979.  The "granting of presentence confinement credit is mandatory. . . . The judgment and sentence is therefore subject to correction for inclusion of the mandatory period of presentence confinement credit.  . . .  While the failure to include the total amount of statutory presentence confinement credit that Defendant is entitled to receive requires correction, this does not render the underlying eight-year sentence itself invalid." *State v. Duhon,* 138 N.M. 466, 470-471, 122 P.3d 50, 54 -55 (N.M. Ct. App. 2005), *cert. quashed,* 139 N.M. 353, 132 P.3d 139 (N.M. 2006).

Respondents assert that the presentence confinement claim merely raises an alleged error of state law, which is not cognizable in federal habeas proceedings.[11]  It is

---

[11] *See Doc. 11* at 7 ("The claims raised are matters of New Mexico state law concerning discretionary rulings of the state trial court judge and sentencing.  Federal habeas review is barred.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)(noting federal habeas corpus relief does not lie for errors of state law); *Warren v. Gartman,* 2008 WL 4697056 (10th Cir. 2008)

true as a general proposition that violations of state law cannot be the basis for federal habeas relief, but I have found no Tenth Circuit decisions or decisions from this District that hold presentence confinement claims under the **New Mexico** statute are purely matters of state law.[12]   Indeed, there are but a few cases in either court that even cite § 31-20-12.  However, the *Aycox* decision, while not citing the New Mexico presentence confinement statute,[13] does provide as follows:

> Aycox next claims that respondents violated his constitutional right to due process by refusing to give him credit against his New Mexico sentence for time spent in custody in California.  We must determine initially whether New Mexico's action resulted in incarceration in violation of its own laws or in a process which was fundamentally unfair.  *See, e.g., Vasquez v. Cooper,* 862 F.2d 250, 254 (10th Cir.1988) (rejecting state inmate's habeas claim seeking credit for presentence incarceration on due process grounds where denial of credit did not result in a sentence which

---

(unpublished) (commenting that alleged violations of state law are not a proper basis for federal habeas corpus relief).").

[12]  One Tenth Circuit decision focused on whether the sentence exceeded the state statutory maximum as determinative, based on the Vasquez decision cited in the Aycox quote above.  Using the Vasquez test as the federal law benchmark, and finding the petitioner failed to meet it, the decision then noted "[a]s we have indicated before, 'we have no authority to consider any error of law unless it violates federal law.'  *Cummings v. Evans,* 161 F.3d 610, 617 (10th Cir. 1998)."  *Wishom v. Roberts,* 37 Fed. App'x 338, 339-40 (10th Cir. 2002).  I do not find *Wishom* to be controlling here.  Foremost, it is distinguishable factually because there the inmate did receive the credit and there were no calculation issues.  Instead, he wanted the credit double-counted toward two sentences.  *See id.* at 339 ("arguing that under Kansas law the 170 days should have been credited toward both his probation violation and aggravated escape sentences. . . . The Kansas district court denied the motion, holding that (1) Wishom had been held for both the probation violation and the aggravated escape charge during the 170 day period and (2) 'credit for time served while held on both matters must first be applied to Case No. 99CR855 [the probation violation] and may not be credited toward both matters.'").  Second, the opinion suggests there was no state law violation thereby ostensibly indicating why it did not follow the *Aycox* due process analysis.  Finally, Wishom did not involve an appeal from this District as did Aycox.  *See infra,* note 13.

[13]  The appeal was from this District in a § 2254 case, and the records are not scanned at either level and are archived.  *See Aycox v. Lytle,* CIV97-667 ELM/JHG; *Aycox v. Lytle,* # 98-2298.  New Mexico does not have a separate presentence confinement credit statute governing situations where the defendant has escaped.  It is a matter of

exceeded the permitted range under state law and procedure was not fundamentally unfair). *If the state violated its own laws, Aycox must show that the alleged violation of state law denied him due process under the Fifth and Fourteenth Amendments.* *See Hicks v. Oklahoma,* 447 U.S. 343, 346 (1980). Moreover, the deprivation occasioned by the state's failure to follow its own law must be "arbitrary in the constitutional sense"; that is, it must shock the judicial conscience. *See, e.g., Collins v. City of Harker Heights, Texas,* 503 U.S. 115, 129-30 (1992).

In this case, Aycox has not even shown a violation of state law. An escapee from a New Mexico prison who is incarcerated elsewhere on an unrelated charge is not entitled to earn actual or good time credit on his New Mexico sentence. *See Caristo v. Sullivan,* 112 N.M. 623, 818 P.2d 401, 410 (N.M. 1991) ["There is no merit to Kinslow's claim of entitlement to credit for time served on his separate Georgia offense. It is axiomatic that he could not earn actual or good time credit on his New Mexico sentence for confinement which was unrelated to his New Mexico offense."]. Moreover, Aycox has not shown, by clearly established Supreme Court precedent, that New Mexico's decision to deny him credit resulted in any fundamental unfairness or otherwise denied him due process of law.

*Aycox v. Lytle,* 196 F.3d 1174, 1179-80 (10th Cir. 1999) (emphasis added).

The *Aycox* decision has been interpreted as standing for the proposition that, while there is no federal constitutional right to presentence confinement credit, when a state statute does grant such credit, a federal habeas court can entertain a due process claim.[14] This is consistent with the observation in *Hicks* that the "liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State,"

---

[14] *See Conway v. Schriro,* 2006 WL 3063643 at * 8 (D. Ariz. 2006) ("There is no federal constitutional right to presentence incarceration credit toward the ultimate sentence of imprisonment. . . . To establish a due process violation in this context, a petitioner must show that the failure to award presentence credits violated state law. *Aycox.* . . . If the state court violated its own laws, the petitioner must further show that the alleged violation denied him due process under the Fifth and Fourteenth Amendments. *Id.*"); *cf., Russo v. Johnson,* 129 F. Supp. 2d 1012, 1017-18 (S.D. Tex. 2001) (and cases cited therein, including *Aycox,* and stressing that in the absence of a state statute, there is no federal right to credit for presentence time served); *c.f., Vasquez,* 862 F.3d at 251(in a state that had no presentence confinement credit statute issue was whether the Fourteenth Amendment required such credit; held defendant "failed to show hat . . . he was denied a fundamental right").

447 U.S. at 346, particularly given that the New Mexico statute is unequivocally

mandatory.[15]  In light of *Aycox,* I will treat the § 2241 presentence claim as a due

process issue, rather than recommend dismissal as a noncognizable state law claim

without further inquiry.

### C.  The Presentence Confinement Calculation Appears To Be Erroneous

In the written judgment, Petitioner received "credit for 10 months pre-sentence

confinement and for post-sentence confinement until delivery to the place of

incarceration."  *Doc. 11-2* at 3.  He asserts that, as was the case in *Miranda,* he is

entitled to presentence confinement credit for "any and all days" he was confined at the

Bernalillo County Metropolitan Detention Center ("BCMDC") "in between bonds being

revoked." *Doc. 1* at 2; *see also Doc. 11-2* at 22.  He also asserts that BCMDC "has

records . . . which clearly indicate the correct amount of credit due" and that he is due

12 months and two days for presentence confinement.  *Doc. 1* at 2.

The state docket sheet shows the following as the dates of arrests, bonds

posting, and imposition of sentence:

arrest on 11/01/2004 (entry 11/02/04)     bond posted on 02/02/2005 (entry 02/2/2005)
arrest on 03/02/2006 (entry 03/03/06)     bond posted on 04/06/2006 (entry 04/06/2006)
arrest on 09/20/2006 (entry 09/21/06)     bond posted on 10/04/2006 (entry 10/04/2006)
arrest on 02/27/2007 (entry 02/28/07)     bond posted on 03/08/2007 (entry 03/08/2007)
arrest on 01/15/2008 (entry 01/16/08)     sentenced 7/31/2008 (entry 07/31/2008)

---

[15]  *See also, e.g., Straley,* 582 F.3d at 1212 (mandatory language state statute can
create liberty interest in parole); *Watson v. Williams,* 329 Fed. App'x 193, 195-196 (10th Cir.
2009) ("Watson asserts that New Mexico law creates a constitutionally-protected liberty interest
in earning good-time credits.  We have already flatly rejected this argument.  The
then-applicable New Mexico statute indisputably gave the state discretion to award such credits.
. . . Watson was never awarded good-time credits, and we find no indication in the New Mexico
statute that the awarding of such credits was mandatory.  Therefore, he has no cognizable
claim for the denial of good-time credits under § 1983.")

Respondents' Answer contains a letter on BCMDC letterhead, self-described as to "verify" when Petitioner was confined at BCMDC for "pre-sentence and post-sentence confinement at this facility."  *Doc. 11-2* at 36.  The letter tracks the same five sequences of arrest/release, arrest/sentence as the docket sheet.  However, the letter contains certain typographical and mathematical errors:

| | | |
|---|---|---|
| 11/01/2004 - 02/02/2005 = | 93 days | |
| 03/02/2006 - 04/06/200**6** = | 35 days (sic)[16] | |
| 09/20/2006 - 10/01/2006 = | 11 days | |
| 02/2**7**/2007 - 03/08/2007 = | 9 days (sic)[17] | |
| 01/15/2008 - 08/20/2008 = | **218** days (sic)[18] | |

*Id.*

The letter concludes that Petitioner spent "a total of 394 days of pre-sentence and post-sentence confinement" at BCMDC, *id.,* but it is not apparent how the drafter arrived at that figure.  The "394 days" conclusion does not represent the total number of days shown on the face of the letter – that total would be 403 days (93+35+11+9+255 = 403).  The "394 days" conclusion also does not represent the total number of days based on the correction above – that total would be 366 days (93+35+11+9+218 = 366, which may be how Petitioner arrived at his 12 month/2 day total).  Nor does the conclusion appear to be an attempt to segregate "presentence" from "postsentence"

---

[16]  The letter shows "04/26/200**9**" as the end date, an evident typographical error given that the number of days for the period between March 2nd to April 6th in 2006 was 35 days.

[17]  The letter shows "02/2**4**/2007" as the date of arrest, but docket sheet shows the date of arrest as February 27, 2007.  The "2/24" entry is an evident typographical error, given that the number of days for the period between February 27th and March 8th in 2007 was 9 days.  February 2007 was not a leap year.

[18]  The letter provides that the number of January 15, 2008 to August 20, 2008 is **255,** when it is 218 days.

confinement.  According to the docket sheet, Petitioner's sentencing hearing was held July 31, 2008 and sentence was imposed that day.  The written judgment that directed is transfer to the New Mexico Department of Corrections to begin his sentence was entered 20 days later on August 20, 2008.  Deducting that 20-day period from the 403 days shown on the face of the letter equals leaves 383 days of purely presentence confinement, not 394.  If Petitioner was earlier sentenced to some other state felony that would qualify to stop the presentence confinement clock from running, it is not evident from the record before me.  *See State v. Romero,* 132 N.M. 745, 55 P.3d 441 (N.M. Ct. App.) (rejecting notion the notion that a defendant who is convicted of multiple crimes can receive double credit for overlapping presentence incarceration periods), *cert. denied,* 132 N.M. 732, 55 P.3d 428 (N.M. 2002).

Moreover, the *Miranda* calculation rules require that any part of a day be counted as a one-day credit.  The above calculations do not count the day of arrest – they only calculate the number of days between the date of arrest and the date of release or sentence (inclusive of the date of release/sentence).  Thus, it appears that another five days of credit would be due.

Based on the above alternatives, presentence confinement totals more than the "ten months."  Even the lowest figures above (346 or 351 if the five "arrest days" are added) result in, roughly, from a little more than 11 months to a little less than 12 months presentence confinement (depending on if one uses a "30-day month" or a "31-day month.").  There is plainly a violation of state law in that a miscalculation occurred and that violation is plain from the face of Respondents' own submissions.  New Mexico mandates presentence confinement credit so that convicts who can afford bail and

convicts who cannot stand in the same footing when they begin serving their sentences. Without an accurate calculation of the presentence total, that purpose would be undermined.  Indeed, the *Duhon* case involved a situation where the trial judge credited only one-half of the time the defendant spent on house arrest.  138 N.M. at 467-68, 122 P.3d at 51-52.  That ultimately proved to be the wrong calculation and the court held that "judgment and sentence is therefore subject to correction for inclusion of the mandatory period of presentence confinement credit" and "remand[ed] with instructions to grant Defendant the total presentence confinement credit to which she is entitled."  *Id.* at 470, 471, 122 P.3d at 54, 55.

It is in no way "shocking" for the Court to encounter sentencing miscalculations. Nor is it "shocking," given the unsettled nature of the law in this area for Respondents to take the legal positions they that would have amounted to a dismissal without a review of the merits.  It is somewhat "shocking" that State officials would not thoroughly check discrepancies that are brought to their attention and *sua sponte* correct obvious miscalculations, given the purposes behind the statute.  At the very least, since it is my reading of binding precedent that Court is obliged to inquire into the merits of the claim as a due process issue, then Respondents ought to be obliged to correct the situation if the result of that review is that the Court finds an error.  Therefore, I recommend that a proper accounting of the additional presentence credit due be made by Respondents, and that Petitioner's judgment and sentence be amended accordingly.

### D.  The *Blakely*/Eighth Amendment Claim Is Without Merit

Petitioner's plea agreement specifically noted that the "base level" incarceration he was facing was nine years and the judge could have imposed that sentence followed

by two years of parole.  Petitioner's plea agreement also specifically noted that a

sentence of probation could be imposed if he did not successfully complete the drug

program.  Thus, the sentence Petitioner received did not exceed the "base level" or

contravene any of the terms of the plea agreement.

Neither *Blakely* nor the Eighth Amendment afford him any relief under these

circumstances.  The sentence is not alleged to have exceeded any statutory maximum

nor did the trial judge find any "additional facts" outside what was admitted in the plea,

so the *Apprendi/Booker/Blakely* line of cases is wholly inapplicable.[19]  Nor does this

case remotely represent an "extraordinary" situation where the sentence is "grossly

disproportionate."[20]

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

1.  This petition be construed as a § 2241 / § 2254 "hybrid" petition;

---

[19]  *E.g., Oregon v. Ice,* 129 S. Ct. 711, 716 -17 (2009) ("this Court held in *Apprendi,* "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." . . . We have applied *Apprendi*'s rule to facts subjecting a defendant to the death penalty, *Ring* . . ., facts allowing a sentence exceeding the "standard" range in Washington's sentencing system, *Blakely,* . . . and facts prompting an elevated sentence under then-mandatory Federal Sentencing Guidelines, . . . *Booker,* . . .  Most recently, in Cunningham . . ., we applied *Apprendi*'s rule to facts permitting imposition of an "upper term" sentence under California's determinate sentencing law."); *Blakely v. Washington,* 542 U.S. 296, 303-04 (2004) ("the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.").

[20]  *See, e.g., United States v. Williams,* 576 F.3d 1149, 1165 (10th Cir. 2009) ("The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences. . . .  Under that principle, the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime."); *Hawkins v. Hargett,* 200 F.3d 1279 (10th Cir. 1999) (application of the principle in § 2254 case), *cert. denied,* 531 U.S. 830 (2000); *Jackson v. Ray,* 292 Fed. App'x 737 (10th Cir. 2008); *supra* note 9 (*Wymer* decision, same).

2. The § 2254 *Blakely*/Eighth Amendment claim be denied;

3. The § 2241 presentence confinement claim be granted; and

4. The appropriate habeas relief be that Respondents make a proper accounting of the additional presentence credit due, and Petitioner be resentenced accordingly.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF**

**SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
UNITED STATES MAGISTRATE JUDGE